UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| CARMELLA GIBELLINO-SCHULTZ | : | |
| Debtor | : | Bankruptcy No. 10-30669 |

.................................................

MEMORANDUM

.................................................

Melvyn A. Woloshin and his law firm, Woloshin, Lynch, Natalie & Gagne,
P.A. (collectively "Woloshin") filed a motion seeking termination of the bankruptcy stay
under 11 U.S.C. § 362(d)(1).  This chapter 7 debtor opposes the motion.  A hearing was
held, at which the parties agreed that the relevant facts were not in dispute.  For reasons
that follow, the instant motion shall be denied.


I.


The debtor filed a voluntary petition in bankruptcy under chapter 7 on
December 8, 2010.  Before the bankruptcy petition was filed, the debtor had been named
as a defendant in a lawsuit filed in Delaware state court by New Castle Shopping, LLC
("NCS"), docketed in that court as C.A. No. 4257-VCL.  See Woloshin Motion and
Answer, ¶ 7, ex. A.

According to its first amended and verified complaint, NCS alleged that it
holds a ground lease of the entire Penn Mart Shopping Center, located in New Castle,
Delaware.  This ground lease dates from 1986.  At the time it obtained the 1986 ground
lease, NCS, as lessor, entered into a long-term lease agreement (until 2015 with an option

to extend until 2045) of store space to Mr. Ronald Gibellino, at terms highly favorable to Mr. Gibellino. Mr. Gibellino was to operate a liquor store at his leasehold.

Under the terms of the lease between Mr. Gibellino and NCS, the favorable lease terms would run only in favor of Mr. Gibellino and "any other person(s) or entity(ies) of which Ronald Gibellino or a member of his family hold the controlling interest," with the phrase "family member" defined in the agreement to include his daughter. Ex. A, ¶ 14. The agreement further provided that if Mr. Gibellino or his family member sought to assign or sublet the store lease to any person or entity not entitled to favorable lease terms, such assignment or sublease required NCS's prior approval.

In November 1986, Mr. Gibellino subleased his liquor store leasehold to an entity known as Penn Mart Discount Liquors, LTD ("PMDL"). This entity was controlled by his daughter, the instant chapter 7 debtor, who is identified in NCS's first amended complaint as Carmella Burkhart. It is alleged by NCS that, until 2000, PMDL operated the liquor store at the shopping center and paid its rent to NCS.

NCS asserts that in 2000 the debtor conspired to transfer her interest in PMDL in a manner that would allow her to continue to pay NCS below-market rent while receiving higher rent from the transferees. To that end, and knowing of the rights of NCS, a series of agreements were entered into among the transferees, PMDL and the debtor, which agreements were drafted by Woloshin. Woloshin allegedly knew that NCS approval was required, but nonetheless drafted agreements that "provided the illusion that [the debtor] remained in control" of PMDL and therefore could continue to pay rent to NCS on favorable terms. Ex. A, ¶¶ 22, 23, 28.

2

NCS also contends that these third-party transferees, while in de facto control of the liquor store operations, paid significant rent to PMDL for a number of years as sublessees, while the debtor tendered far lesser sums to NCS based upon the rent fixed by the 1986 lease. Furthermore, NCS maintains that Woloshin, on behalf of the debtor and PMDL, knowingly and falsely represented to NCS that the debtor still held a controlling interest in PMDL.

NCS asserts that it first learned of the true nature of the debtor's 2000 sale transaction involving PMDL in 2008. Thereafter, NCS brought suit in Delaware state court against the debtor, Mr. Woloshin, the Woloshin law firm, and the third-party transferees. In its multi-count complaint, NCS, as landlord, seeks the following relief:

> [F]or declaratory relief, fraud, breach of contract, breach of
> the implied covenant of good faith and fair dealing,
> interference with contract, eviction, civil conspiracy, and
> damages arising out of the defendant-tenants' fraud,
> misrepresentation and breach of a commercial lease
> agreement all orchestrated by their legal counsel. Plaintiff
> seeks rescission of the lease agreement, a declaration that the
> Defendants have breached the April 16, 1986 lease, an order
> enjoining defendants from possessing the premises as
> hereinafter defined, and damages in an amount to be
> determined at trial.

Ex. A, ¶ 1.

Also before the debtor filed the instant bankruptcy case, Mr. Woloshin and his law firm, as defendants, filed an answer denying any wrongful conduct on their part. They also filed a cross-claim against all of their co-defendants, including the debtor, asserting a right of contribution under Delaware's Uniform Contribution Among Tortfeasor's Act, 10 Del. C. §§ 6301-6305, as well as a common law right of indemnification. Woloshin Motion and Answer, ¶ 8, ex. B.

3

When she filed her chapter 7 petition, the debtor included NCS among her
unsecured creditors. Thus, NCS received notice of her bankruptcy filing. In January
2011, NCS sought relief from the bankruptcy stay to prosecute its pending state court
litigation against the debtor. Specifically, it stated in its lift-stay motion:

> Debtor will not be prejudiced by allowing the State Court
> Action to resume. All parties were prepared to move forward
> with mediation when Debtor filed her petition on the night
> before mediation was to commence. Upon information and
> belief, one of Debtor's co-defendants, Woloshin, has
> insurance coverage for this type of matter. NCS seeks only to
> proceed against all defendants in the State Court Action, and
> to liquidate its claim against the Debtor, and not the
> enforcement of any judgment or remedy against Debtor.

NCS Lift Stay Motion, ¶ 20 (docket entry #22).

This motion was served upon the chapter 7 trustee, debtor's counsel, and
the United States trustee. See Certificate of Service (docket entry #23). When no
response in opposition thereto was filed, NCS was granted relief from the bankruptcy stay
by default under Fed. R. Bankr. P. 4001(a), 7055, 9014(c).

In addition, the chapter 7 trustee filed his report that his examination of the
debtor and her affairs led him to conclude that there were no non-exempt assets available
for distribution to creditors. See docket entry 1/10/2011. Thus, this bankruptcy case was
classified as a no-asset chapter 7 case.

In February 2011 Woloshin filed its present lift-stay motion under section
362(d)(1). Thereafter, as no complaint objecting to the debtor's discharge having been
filed by the March 8, 2011 bar date established under Fed. R. Bankr. P. 4004(a), a chapter
7 discharge was entered pursuant to Fed. R. Bankr. P. 4004(c). Woloshin, however, did
timely file a complaint seeking a determination of nondischargeability against the debtor

4

pursuant to 11 U.S.C. § 523(a) and Fed. R. Bankr. P. 4007(c). NCS did not file any such

complaint. Woloshin's adversary proceeding is still pending in this court. According to

the parties, the Delaware state court litigation is scheduled to be tried in July 2011.


II.


Although its motion does not expressly so state, Woloshin's counsel

explained at the hearing that these defendants seek the same relief under section 362(d)(1)

as did NCS: the ability to prosecute their indemnity and contribution crossclaim against

the debtor, albeit without execution until their nondischargeability complaint is

determined. Essentially, they request that the bankruptcy stay be terminated so that the

Delaware state court litigation be allowed to proceed and determine all claims against the

debtor, not just NCS's claims, with the adversary proceeding in this court held in

abeyance.

They further argue that if the Woloshin defendants are found liable to NCS,

and if their crossclaim is upheld in the state court litigation, only then would Woloshin's

nondischargeability adversary proceeding against the debtor under section 523(a) be tried.

If the Woloshin defendants were found not liable to NCS, or if the debtor were found not

liable on the crossclaim, then the adversary proceeding would be dismissed.

Woloshin also contends that the factual findings made by the state court on

NCS's fraud claim and Woloshin's crossclaim against the debtor would have collateral

estoppel effect in the adversary proceeding. See generally Grogan v. Garner, 498 U.S.

279, 284 n.11 (1991); In re Graham, 973 F.2d 1089 (3d Cir. 1992); In re Schlessinger,

5

208 Fed. Appx. 131, 132 (3d Cir. 2006) (non-precedential). Thus, terminating the

bankruptcy stay to permit prosecution of all the claims pending against the debtor in state

court would be, in Woloshin's view, the fairest and most efficient method of resolving the

adversary proceeding.

In opposing Woloshin's requested relief the debtor argued at the hearing

that the recent entry of her chapter 7 discharge renders Woloshin's contentions incorrect.

She maintains that NCS is no longer able to prosecute its claims against her in light of 11

U.S.C. § 524(a)(2); nor should Woloshin. Moreover, she contends that the adversary

proceeding should be tried first, especially because she has bankruptcy counsel to

represent her in this forum, but no state court counsel.[1]

At the outset, I note that the entry of discharge precludes my terminating the

bankruptcy stay in favor of Woloshin under section 362(d). Section 362(c) states:

> (c) Except as provided in subsections (d), (e), (f), and (h) of
> this section--
>
> (1) the stay of an act against property of the estate under
> subsection (a) of this section continues until such property is
> no longer property of the estate;
>
> (2) the stay of any other act under subsection (a) of this
> section continues until the earliest of--

---

[1]NCS is not a party in this contested matter. Therefore, I decline to resolve the
parties' disagreement whether the discharge injunction in section 524(a)(2) trumps the earlier
entered order in favor of NCS terminating the stay under section 362(d). I do note, however, that
courts have held that the binding nature of a confirmed chapter 13 plan, under section 1327(a),
may have such an effect. See, e.g., In re Diviney, 225 B.R. 762, 771 (B.A.P. 10th Cir. 1998); In
re Lemma, 394 B.R. 315, 323-24 (Bankr. E.D.N.Y. 2008); In re Moffitt, 2007 WL 1118287, at
*2 (Bankr. N.D. Tex. 2007); Matter of Garrett, 185 B.R. 620, 623 (Bankr. N.D. Ala. 1995); see
also In re Simpson, 240 B.R. 559 (B.A.P. 8th Cir. 1999) (appeal from order denying motion to
terminate the automatic stay is made moot by the subsequent entry of an order of confirmation);
In re Simons, 113 B.R. 942, 949 (Bankr. W.D. Tex. 1990) (confirmation of Chapter 11 plan
superseded earlier order in which stay was lifted by agreement).

6

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied;

Therefore, by virtue of section 362(c)(2)(C), the bankruptcy stay imposed upon Woloshin by section 362(a)(1) and (a)(6)—which enjoined prosecution of Woloshin's prepetition crossclaim against the debtor that sought damages, i.e., in personam relief[2]—has itself expired with the entry of the discharge order. Although the automatic stay was in effect at the time Woloshin filed the instant motion, it has since ended. See, e.g., In re Kowalske, 2009 WL 1708031 (E.D. Mich. 2009); In re Shivani, 2004 WL 484549, at *2 n.8 (Bankr. D. Conn. 2004). Therefore, it is no longer possible to grant Woloshin relief from the bankruptcy stay under section 362(d).

It is well-recognized, however, that the entry of a chapter 7 discharge replaces the statutory stay found in section 362 with a statutory injunction found in section 524(a). See, e.g., In re Winterland, 142 B.R. 289, 291 (C.D. Ill. 1992); In re Henry, 266 B.R. 457, 473 (Bankr. C.D. Cal. 2001); 3 Collier on Bankruptcy, ¶ 362.06[2] (16th ed. 2010) ("Once the debtor receives a discharge, the stay is replaced by a permanent injunction under section 524(a), except as to debts found to be

---

[2]Neither party argues, perhaps in light of the Third Circuit's recent decision In re Grossman's Inc., 607 F.3d 114 (3d Cir. 2010), which decision overrruled Matter of M. Frenville Co., Inc., 744 F.2d 332 (3d Cir. 1984), that Woloshin did not hold a claim against the debtor under Delaware law that was subject to the bankruptcy stay. See generally Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1204-05 (3d Cir. 1991).

nondischargeable under section 523.") (footnotes omitted).  This discharge injunction, in

general, prohibits the continuation of prepetition litigation against the debtor:

> (a) A discharge in a case under this title--
> ***
> (2) operates as an injunction against the commencement or
> continuation of an action, the employment of process, or an
> act, to collect, recover or offset any such debt as a personal
> liability of the debtor, whether or not discharge of such debt is
> waived;

11 U.S.C. § 524(a)(2); see In re Joubert, 411 F.3d 452, 456 (3d Cir. 2005) ("Under §

524(a)(2), a discharge operates as an injunction against a broad array of creditor efforts to

collect debts as personal liabilities of the discharged debtor.").  "Section 524 does not

enjoin actions of creditors who have successfully invoked § 523 by receiving a judgment

declaring their debts to be nondischargeable."  In re Watson, 192 B.R. 739, 749 n.7

(B.A.P. 9th Cir. 1996).

It was obvious to both parties at the hearing that, if Woloshin's motion was

simply dismissed as moot, Woloshin would then file a similar motion seeking relief from

the scope of the discharge injunction to prosecute its state court crossclaim against the

debtor.[3]  Rather than have the parties undergo that time and expense, and with their

consent, I shall treat the instant motion as having sought relief from the scope of section

524(a)(2).  See In re Shivani, 2004 WL 484549, at *2 n.8 ("[I]f the court declares the

Amended [lift stay] Motion to be moot, the issue will be presented again purely as a

question of the effect of the Discharge.  Accordingly, in the interests of judicial economy,

the court will decide the Discharge issue in the context of the Amended Motion."); but

---

[3]I do not understand Woloshin to be seeking a declaratory judgment concerning
the scope of the discharge injunction, which arguably procedurally should be sought through the
filing of an adversary proceeding under Fed. R. Bankr. P. 7001(a)(9).

see In re Winterland, 142 B.R. at 291 (on appeal, treating the lift-stay order entered after

discharge as though it were an order modifying the discharge injunction, but suggesting

that the better practice is for the bankruptcy court to deny the motion as moot).

Some courts have opined that a bankruptcy court has the power to grant

relief to a creditor from the discharge injunction under section 524(a)(2) so that the

creditor may prosecute litigation against the debtor. See, e.g., In re Hendrix, 986 F.2d

195, 198 (7th Cir. 1993). Other courts have declared that a bankruptcy court has no

power to modify the statutory injunction established by section 524(a)(2). See, e.g., In re

Munoz, 287 B.R. 546, 552-53 (B.A.P. 9th Cir. 2002). If I assume, arguendo, that the

power to modify the scope of the injunction exists to permit continuation of pending state

court litigation seeking monetary relief against a discharged debtor, then it should only be

exercised in appropriate, limited circumstances.

Typically, those limited circumstances will arise when: the amount of the

creditor's claim must be fixed so that a chapter 7 trustee may make distributions to

creditors and it is more economical to permit a non-bankruptcy forum to fix such a claim

in the pending non-bankruptcy litigation than to resolve an objection to the claim under

section 502; or, the prosecution of the pending litigation in a non-bankruptcy forum

would efficiently resolve, via collateral estoppel, issues arising in a pending adversary

proceeding under section 523(c). See In re Eastburg, 440 B.R. 851, 858 (Bankr. D.N.M.

2010):

> The scope of claims against a debtor that a plaintiff may
> pursue once the discharge is entered depends on whether the
> following requirements are met: 1) the cause of action to
> establish the debt and a claim of non-dischargeability in a
> pending adversary proceeding are based on the same conduct,
> transactions and occurrences; 2) the non-dischargeable

9

character of the debt is at issue in the adversary proceeding; and 3) the creditor is prosecuting the cause of action in state court for the purpose of applying collateral estoppel to avoid relitigating the validity and extent of the debt in the adversary proceeding.

(footnote omitted).[4]

The existence of circumstances warranting any modification of section 524(a)(2) must be clear. Generally, a determination of a pending nondischargeability complaint should precede prosecution of pending litigation against a debtor in a non-bankruptcy forum. If the complaint is denied, the non-bankruptcy litigation remains enjoined. As recently observed by a colleague:

> Even so, the discharge injunction may replace the restraint of the automatic stay. See 11 U.S.C. § 727(b) (discharge applies to all debts that arose before the order for relief); id. § 524(a)(2) (discharge operates as an injunction against, inter alia, continuation of action to collect a discharged debt). Thus, unless Mr. Yogel prevails in the pending § 523(a) dischargeability proceeding, resumption of his litigation against the Debtor in state court would run afoul of the discharge injunction. In these circumstances, creditors typically forbear from resuming collection activity until resolution of a pending dischargeability proceeding in the bankruptcy court, especially proceedings based on § 523(a)(2), (4) or (6), over which the bankruptcy court has exclusive jurisdiction. See id. § 523(c). To the extent that a creditor might contend that it has the right to proceed in state court after termination of the automatic stay because the discharge injunction is inapplicable to the debt whose dischargeability is as yet undetermined, it would be within the bankruptcy court's power to restrain the creditor from

---

[4]Woloshin does not assert that the debtor is a nominal defendant whose liability must be established so as to trigger the liability of third parties not protected by the bankruptcy stay, such as an insurer. See generally In re Loewen Group, Inc., 2004 WL 1853137, at *23-24 (E.D. Pa. 2004). Thus, the provisions of section 524(e) are not germane. Moreover, this contested matter does not involve nondischargeability litigation not governed by section 523(c), for which a state court would have concurrent jurisdiction, and which clearly can be prosecuted after the chapter 7 debtor's discharge.

10

proceeding in state court pending the conclusion of the
dischargeability proceeding and, generally speaking, it is
difficult to envision the circumstances in which a bankruptcy
court would not exercise that power.

The bottom line here is that the impending entry of the
discharge order and the possible termination of the automatic
stay in the near future, by themselves, are not compelling
reasons for terminating the automatic stay at this time. The
Debtor's interest in obtaining a resolution of the
dischargeability of the subject debt outweighs the interest of
Mr. Yogel in resuming litigation against the Debtor in the
state court.

In re Edler, 416 B.R. 147, 152 (Bankr. E.D. Pa. 2009) (footnotes omitted).[5]

---

[5]I appreciate that In re Eastburg disagreed with the above-quoted holding in In re
Elder. 440 B.R. at 857 n.3. Eastburg essentially concludes that if a creditor has filed a timely
adversary proceeding under sections 523(a)(2), (4), or (6), the creditor/plaintiff is not bound by
the statutory injunction imposed by section 524(a)(2) until the bankruptcy court adjudicates the
adversary proceeding and finds the debt to be dischargeable, and so the creditor may prosecute
state court litigation meeting the three criteria mentioned above. If the debtor wants to insure
that the adversary proceeding is adjudicated before that state court litigation, the debtor must
seek to enjoin the creditor, presumably via a separate adversary proceeding based upon section
105(a).
    In reaching this conclusion, the Eastburg court noted correctly that the injunction
found in section 524(a)(2) does not apply to debts that are nondischargeable. It also held,
however, that "Bankruptcy Code § 523(a) and (c) and (d) contemplate that a debt is not
discharged if a timely complaint is filed objecting to discharge of the debt under 11 U.S.C. §
523(a)(2), (4) or (6) unless and until the court denies the objection." Id., 440 B.R. at 857. By
concluding that the mere filing of a timely complaint under section 523(c) renders the creditor's
claim nondischargeable until the bankruptcy court rules to the contrary, the court in Eastburg
reasoned that the section 524(a)(2) injunction is inapplicable to certain state court litigation
against the debtor.
    My review of section 523(c)(1) causes me to reach a different conclusion than
Eastburg. That subsection states:

(c)(1) Except as provided in subsection (a)(3)(B) of this section,
the debtor shall be discharged from a debt of a kind specified in
paragraph (2), (4), or (6) of subsection (a) of this section, unless,
on request of the creditor to whom such debt is owed, and after
notice and a hearing, the court determines such debt to be excepted
from discharge under paragraph (2), (4), or (6), as the case may be,
of subsection (a) of this section.

(continued...)

11

As mentioned earlier, the chapter 7 trustee has already determined that there will be no distributions made by him in this chapter 7 case. He has filed his report of no non-exempt assets. Thus, creditors were informed under Rule 2002(e) that they need not file any proofs of claim in this case. Accordingly, the fixing of Woloshin's claim against the debtor is not necessary for the administration of this chapter 7 bankruptcy case.

In addition, upon review of the state court pleadings attached to the Woloshin motion and admitted as authentic by the debtor, I conclude that it is improbable that the state court litigation would result in any claim preclusion in the pending nondischargeable adversary proceeding if Woloshin were found liable to NCS and its indemnity and/or contribution crossclaim upheld by the state court.

---

[5](...continued)

Thus, this provision renders a debt dischargeable "unless" the bankruptcy court concludes that section 523(a)(2), (4) or (6) is applicable; not the reverse. Indeed, at trial, the allocation of the evidentiary burden supports this interpretation: the creditor/plaintiff has the burden of persuasion to demonstrate nondischargeability under sections 523(a)(2), (4), and (6). See, e.g., Grogan v. Garner, 498 U.S. 279, 288 (1991); In re Graham, 973 F.2d 1089, 1101 (3d Cir. 1992). Compare 11 U.S.C. § 523(a)(8), which renders a student loan debt presumptively nondischargeable.

Therefore, to the extent that a bankruptcy court has exclusive jurisdiction to determine the nondischargeability of a debt, as required by section 523(c)(1), the injunction under section 524(a)(2) applies until such a determination is made, or the court grants relief from such injunction.

This conclusion suggests to me that Congress probably intended that relief from the section 524(a) injunction can be granted in limited circumstances. For example, section 108(c) may extend the statute of limitations of claims against the debtor for a period of 30 days after "termination or expiration of the stay under section 362. . . ." See generally In re Hermosilla, 430 B.R. 13, 20 (Bankr. D. Mass. 2010). Where a creditor has not commenced litigation against the debtor prepetition, but has filed a timely adversary proceeding against a debtor within the scope of section 523(c)(1) seeking simply to declare the creditor's unliquidated claim to be nondischargeable, and the debtor has received a discharge thereby terminating the bankruptcy stay and possibly triggering the 30-day extension period under section 108(c), it would be appropriate to grant a request to modify the discharge injunction to permit the creditor to protect itself from expiration of the limitations period by commencing state court litigation against the debtor.

Among the issues in the Delaware state court litigation are whether Woloshin made any false representations or false pretenses to NCS, or whether Woloshin knowingly aided and abetted the debtor in her allegedly deceptive conduct to NCS. NCS has not alleged that Woloshin, if innocently deceived by the debtor, should be held liable to it. Thus, if Woloshin is found liable to NCS, such liability will be based upon its active and knowing participation in the debtor's allegedly fraudulent activities to hide her transfer of control of PMDL to the third-party purchasers.

Even in such an instance of liability, Woloshin may be able to seek contribution or indemnity from the debtor under Delaware law.

To prevail in its adversary proceeding in this court, it will be necessary for Woloshin to prove that the debtor acted fraudulently as to Woloshin, not as to NCS. See In re Cossu, 410 F.3d 591, 596-97 (9th Cir. 2005); In re Spigel, 260 F.3d 27, 33-35 (1st Cir. 2001); see also In re Fishgold, 206 B.R. 50, 55 (Bankr. W.D.N.Y. 1997). Proof of such fraud is not a necessary component of Woloshin's state law crossclaim against the debtor. One may be entitled to contribution and/or indemnity from a co-defendant in the absence of fraud. See, e.g., In re Spigel, 260 F.3d at 34-35.

For example, in Builders and Managers, Inc. v. Dryvit Systems, Inc., 2004 WL 304357 (Del. Super. 2004), a general contractor of a residential development sued an "exterior insulation finish system" manufacturer (and others) for contribution. The general contractor believed itself liable for structural damage caused by water infiltration into the residences, and that the exterior insulation provided by the defendant was defective. No allegation of fraud on the part of the general contractor or the manufacturer

13

was made. Nonetheless, the general contractor sufficient pled a claim for contribution.

The Delaware Superior Court explained:

> The right to contribution is triggered when it is appropriate
> for liability to be apportioned among codefendants. In
> Delaware, contribution is governed by the [Uniform
> Contribution Among Tortfeasors Law], which provides the
> parameters for determining when contribution is appropriate
> and how it is to be decided. The inherent requirement is that
> the parties are joint tortfeasors who share a "common
> liability." Defendant Dryvit argues that Plaintiff cannot show
> any common liability. Section 6302(b) of the UCATL
> provides as follows:
>
>> A joint tort-feasor is not entitled to a money
>> judgment for contribution until he or she has by
>> payment discharged the common liability or has
>> paid more than his or her pro rata share thereof.
>
> This Court has previously stated that a finding of common
> liability is supported if the facts alleged in the Complaint
> support "some theory of negligence" against the defendant.
> In this case, the Complaint alleges numerous instances of
> negligence on Dryvit's part in regard to its installation system,
> including, inter alia, failing to provide for drainage of water
> that could potentially seep behind the system, failing to
> provide a water barrier behind the system, failing to insure
> that the installer was properly trained, and failing to warn that
> a Dryvit rep should have been present for the installation.
> Viewing these allegations in the light most favorable to
> Plaintiff, the Court concludes that the Complaint survives the
> UCATL requirement that a showing of common tort liability
> be made.

Id., 2004 WL 304357, at *2.

Accordingly, Woloshin must prove for its contribution claim under

Delaware law that, if it is liable to NCS, the debtor was a joint tortfeasor, with the amount

of contribution determined by the allocation of fault. Woloshin has not pled in state

court, nor need it prove, that it was defrauded by the debtor. Thus, the issue of fraud by

the debtor against Woloshin, which is central to the pending adversary proceeding in this

court, would likely never arise in the state court litigation.

   Similarly, Delaware recognizes a right of indemnification, even if there is

no express contractual provision between the parties:

> "Indemnity in its most basic sense means reimbursement and
> may lie when one party discharges a liability which another
> rightfully should have assumed, and it is based on the
> principle that everyone is responsible for his or her own
> wrongdoing, and if another person has been compelled to pay
> a judgment which ought to have been paid by the wrongdoer,
> then the loss should be shifted to the party whose negligence
> or tortious act caused the loss." The right to indemnification
> can rest on any one of three grounds: (1) an express contract;
> (2) a contract implied-in-fact; or (3) equitable concepts arising
> from the tort theory of indemnity, i.e., indemnification
> implied-in-law.

Lagrone v. American Mortell Corp., 2008 WL 4152677, at *6 (Del. Super. 2008)

(quoting  41 Am. Jur.2d Indemnity §§ 1, 2 (2008)) (footnotes omitted).

   Equity may impose indemnity when there is "a 'great difference' in the

gravity of the fault of the two tortfeasors; or that it rests upon a disproportion or

difference in character of the duties owed by the two to the injured plaintiff." Id., 2008

WL 4152677, at *7 (quoting Prosser & Keeton on the Law of Torts, § 51 (5th ed. 1984):

> [T]he remedy [of implied indemnification] is not available to
> joint tortfeasors who allegedly are concurrently liable for
> active negligence. In such instances, an allocation of fault
> and contribution in accordance with the allocation is the
> appropriate and exclusive remedy among joint tortfeasors.
> Indemnification is available as a common law remedy only
> when the putative indemnitee faces liability of a different
> character than that faced by the putative indemnitor. The
> distinction is a matter of character of fault, not degree of fault.
> To be clear, the indemnitee must be liable only for "passive
> negligence" and the indemnitor must be liable for "active
> negligence."

15

Id., 2008 WL 4152677, at *8.

Again, resolution of Woloshin's indemnification claim against the debtor would not be based upon any fraud committed by the debtor upon Woloshin, but upon any difference in the nature of their liability to NCS. Therefore, even if Woloshin were to prevail in its indemnification claim, it would be unable to assert issue preclusion in its pending nondischargeability proceeding.

III.

In summary, section 524(a)(2) presently enjoins Woloshin's crossclaim against the debtor. Moreover, to the extent this court has the power to do so, this creditor has not demonstrated any equitable basis to proceed against the debtor before a resolution of its pending adversary proceeding occurs. Therefore, its motion for leave to prosecute its crossclaim will be denied. Instead, a pretrial order will issue to bring about a reasonably prompt determination of Woloshin's nondischargeability claim. If Woloshin prevails, then it will be free to prosecute its state court claim against the debtor and execute thereupon, consistent with section 522(c).


_____
BRUCE FOX
United States Bankruptcy Judge

Dated: April 11, 2011

16